UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SOUEN KIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:10-cv-00443-DBH |
| | ) |
| MAINE DEPARTMENT OF CORRECTIONS, | ) |
| et al., | ) |
| Defendants | ) |

**RECOMMENDED DECISION**

Souen Kim, a prisoner sentenced by the Maine state courts who has been administratively transferred to Massachusetts pursuant to the Interstate Corrections Compact, is suing the Maine Department of Corrections and Martin Magnusson, the former commissioner of corrections, alleging a denial of access to Maine legal materials. Kim's vehicle for this civil action is 42 U.S.C. § 1983. Kim seeks declaratory and injunctive relief, as well as compensatory and punitive damages for these alleged deprivations. The defendants have moved to dismiss in part and for summary judgment as to the remainder of the complaint. (Doc. No. 15.) I now recommend that the court grant their motion.

**The Litigation Background**

On June 22, 2006, Kim filed suit against various prison officials in both Massachusetts and Maine. As part of his Massachusetts complaint Kim alleged that certain Maine defendants, including Martin Magnusson, the defendant in this action, had denied him his constitutional right to access the courts by refusing to send him any Maine legal materials. See Kim v. Veglas, 607 F.Supp.2d 286 (D. Mass. 2009). That litigation was resolved in May 2009, when Kim, the Maine prison librarian, and Magnusson executed a settlement agreement that has been submitted by the defendants in support of their motion for summary judgment. (Doc. No. 17-1.) As part

of the settlement agreement, Kim released all claims then existing against Magnusson and the Department of Corrections. (Id. ¶ 6.) Kim was represented by counsel at the time.

Kim acknowledges that any claim relating to legal materials prior to May 2009 is barred by the settlement agreement. (Resp. Mot. Summ. J. at 4, Doc. No. 19.) Kim alleges that since May 2009 he has attempted to access the state courts of Maine to pursue issues related to: (1) corrections officials' refusal to grant Kim good time he is entitled to under Maine law; (2) denial of dental care to the standard provided in Maine's prisons; and (3) lack of due process regarding classification decisions. According to Kim he has requested access to Maine legal materials through the mechanism negotiated in the settlement agreement and it has proven inadequate, thus giving rise to this new lawsuit.

## Motion to Dismiss

The defendants claim they are entitled to judgment as a matter of law for a variety of reasons. They assert: (1) claims prior to May 19, 2009, are barred by the settlement agreement; (2) the Department of Corrections is not amenable to suit under 42 U.S.C. § 1983; (3) Magnusson can have no respondeat superior liability under § 1983; (4) any claim against Magnusson is rebuffed by his assertion of qualified immunity; and, finally, (5) that on the undisputed facts set forth in the summary judgment record the defendants have provided Kim with adequate access to legal materials since the date of the settlement agreement. The first three arguments for dismissal merit only brevis discussion because the defendants are obviously correct as a matter of law and Kim does not present any reasonable arguments that oppose these points. In fact he concedes that claims prior to May 19, 2009, are barred by the settlement agreement and I conclude that the other claims fail as a matter of law for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Neither the Department of Corrections nor Magnusson in his official capacity is amenable to suit for monetary damages under 42 U.S.C. § 1983. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 64, 70 (1989) (neither a state nor its agencies may be sued in any court, federal or state, for a violation of 42 U.S.C. § 1983 because neither the state nor its agencies is a "person" within the meaning of that statute). Additionally, the Eleventh Amendment prevents a state and its agencies from being sued in federal court. Poirier v. Mass. Dept. of Corrections, 558 F. 3d 92, 97 & n. 6 (1st Cir. 2009) (states and their agencies are entitled to immunity). The suit against Magnusson in his official capacity is tantamount to a suit against the State of Maine. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Furthermore, Magnusson cannot be held liable for the unconstitutional conduct of his subordinates by way of the doctrine of respondeat superior in a 42 U.S.C. § 1983 action. Ashcroft v. Iqbal, 556 U.S. ___, __,129 S.Ct.1937, 1948 (2009). Accordingly, I recommend that the portion of the motion seeking dismissal of these claims be granted and that the Department of Corrections and Martin Magnusson in his official capacity be dismissed and further that all claims against Magnusson personally that predate the 2009 settlement agreement be dismissed, as well all claims against him based upon a theory of respondeat superior. That leaves the claims for monetary damages and prospective injunctive relief against Magnusson personally[1] based upon a claim that Kim's constitutional right of access to Maine courts has been violated.

## Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] Magnusson is no longer the Commissioner of Corrections and if prospective injunctive relief were warranted this Court could take judicial notice that Magnusson is no longer the commissioner and, after notice, substitute the appropriate party. See Poirier, 558 F.2d at 94, n. 1. It is unnecessary to pursue such a course in light of the recommendation I have made on the summary judgment motion.

R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). By local rule, summary judgment facts are introduced by means of a separate, short, and concise statement of material facts, which statements must be supported by record citations. D. Me. Loc. R. 56(b), (c). The Court's review of the record is guided by the moving party's statement, the non-moving party's opposing statement, including any additional statement, and the moving party's limited reply statement. D. Me. Loc. R. 56(b), (c), (d); see also Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining the spirit and purpose of Local Rule 56). Appropriate record sources include depositions, documents, electronically stored information, affidavits or declarations, stipulations (encompassing those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). Kim is entitled to have the summary judgment facts considered in the light most favorable to his cause. Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011). However, where Kim bears the burden of proof, he still must present definite, competent evidence from which a reasonable person could find in his favor. Torrech-Hernandez v. GE, 519 F.3d 41, 47 & n.1 (1st Cir. 2008) ("While it is true that in the summary judgment context all reasonable inferences must be drawn in favor of the non-moving party, the District Court is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party.").

4

In the context of prisoner litigation in this District, special care must be given to a prisoner's pro se filings in opposition to a motion for summary judgment. This court has observed that a prisoner's nonconforming summary judgment submission should be reviewed by the court and facts set forth in a verified complaint or prisoner affidavit should be considered when examining the entire summary judgment record. Clarke v. Blais, 473 F.Supp.2d 124, 128 (D.Me. 2007). In this case the defendants filed a twelve-paragraph statement of fact to which Kim responded following the Local Rule 56 praxis by admitting, denying, or qualifying, and by adding eight additional paragraphs of material facts. Defendants object to Kim's filing because many of Kim's record citations are limited to the complaint allegations. Kim filed an attempt at a verified complaint, with a form of "attestment" at the end. To the extent the complaint is cited for its facts, as opposed to legal conclusions or argument, I have included those facts in the statement of facts set forth below. Kim also filed a personal affidavit in opposition to the summary judgment motion. (Doc. No. 20-1.)

*Statement of Material Facts*

Kim is a Maine prisoner who was transferred from the Maine State Prison to MCI/Norfolk in Massachusetts in 2005 pursuant to the Interstate Corrections Compact. (SMF ¶ 1, Doc. No. 16.) Kim qualifies this statement by asserting that during the prior legal action in Massachusetts he had been housed at MCI/Walpole. (Resp. SMF ¶ 1, Doc. No. 20.) In 2006 Kim sued the Department of Corrections and the prison law librarian (among others) in federal court in Massachusetts alleging in part that the Maine State Prison failed to provide him adequate access to legal materials while he was imprisoned in Massachusetts. (SMF ¶ 2.) The parties negotiated a settlement of Kim's lawsuit and entered into a written settlement agreement. Under the agreement, Kim released the Maine defendants from all claims associated with his allegation

5

that the defendants had deprived him of access to legal materials, beginning with his transfer from Maine to Massachusetts in 2005 to the date of the Settlement agreement, which was finally executed by all parties on May 19, 2009. (SMF ¶ 3.) Kim qualifies this statement by noting that the settlement agreement only pertained to allegations related to access to the courts, citing to Paragraph 6 of the settlement agreement which speaks to the release of all claims relating to his "allegation that he was deprived of access to Maine legal materials" during the relevant time. (Resp. SMF ¶ 3.) Even prior to the settlement, the Department of Corrections agreed to provide Maine legal materials to Kim. On June 26, 2008, Assistant Attorney General Sleek sent to Kim's attorney, Marc Goldstein, a copy of the "good time" statute applicable to Kim's sentence, a copy of the Maine Department of Corrections policy governing the calculation of release date, and a copy of the Maine Digest topic area "Prisons." In addition, Sleek outlined the method by which Kim could request legal materials from the Maine State Prison librarian. (SMF ¶ 4.) Kim qualifies this statement by noting that nothing in the good time statute explained the means to seek redress in the courts of Maine. (Resp. SMF ¶ 4.)

Jacqueline Weddle, the librarian at the Maine State Prison, was responsible for responding to Kim's requests for legal materials pursuant to the settlement agreement. (SMF ¶ 5.) Kim qualifies this paragraph with the assertion that Magnusson as Commissioner of the Maine Department of Corrections (DOC) was responsible for the promulgation of regulations and policies, a factual assertion not properly supported by citation, but one about which there appears little room for debate. He further asserts that Magnusson had personal knowledge of Kim "being denied access to the state courts of Maine." (Resp. SMF ¶ 5.) Kim's statement is both a conclusion of law and a factual statement which is supported by his affidavit. The factual component is that Kim mailed Magnusson a letter in September 2010 alerting Magnusson to

what Kim perceived as defects with the system of legal access afforded to him. Whether Kim was denied access to the state courts of Maine is entirely a legal conclusion.

Kim's first request for access to legal materials after the settlement was dated June 1, 2009, and was forwarded to Ms. Weddle by Kim's attorney on June 5, 2009. Kim requested an extensive list of cases and several sections of the Corpus Juris Secundum (CJS) titled <u>Prisoners and the Rights of Prisoners</u>. Weddle forwarded copies of the cases he requested (except for one which she could not locate with the information he provided) and a portion of the CJS materials he requested. (SMF ¶ 6.) Kim's second request for legal materials was dated June 27, 2009. Kim requested copies of certain regulations, the identities of certain prison officials, copies of grievance and appeal forms and other information. Weddle replied by sending Kim a copy of Maine DOC classification procedures, a copy of the Maine DOC Disciplinary Policy and Procedures, copies of the prisoner handbook and special management unit housing rules, and the name and address of the Prison Administrator for further information as to prison officials. Weddle also asked for clarification of one request that was not clear to her. (SMF ¶ 7.) Kim's third request for legal materials was dated July 28, 2009. He requested a copy of a specific DOC policy. In addition, he submitted a lengthy list of case citations. Weddle sent copies of all of the requested materials to plaintiff. As she was able to respond to his requests completely, she did not send an explanatory letter with these materials. (SMF ¶ 8.) Kim's fourth request for legal materials was dated July 2, 2010. He asked for several Maine statutes, and several DOC policies. In addition, he asked that Weddle conduct three word searches using specified search terms and to send him the first three cases that came up in response to the searches. Weddle was able to comply with all of his requests with one exception. There is no DOC policy governing interstate transfers; this area is governed by the Maine statute regarding the interstate compact,

and Ms. Weddle was able to send a copy of this statute in response to plaintiff's request. (SMF ¶ 9.) Kim's fifth request for legal materials was dated August 4, 2010. He asked for copies of docket sheets from two federal cases, that Weddle conduct two word searches using specified search terms and send him the resulting cases, and that she provide a Superior Court form for a civil complaint. Weddle was able to comply with all of these requests completely, and so she did not include an explanatory letter when she sent these materials to Kim. (SMF ¶ 10.) The last request Weddle received from Kim for legal materials was dated August 16, 2010. Kim requested a number of cases as well as specific documents from a federal court case. Weddle was able to comply with all of Kim's requests except one, a case she could not locate using the name or citation he provided. (SMF ¶ 11.)[2] In providing materials requested by Kim, Weddle did not require a citation to specific legal materials, although Kim was able to provide accurate citations in most cases. In several instances, Weddle was able to perform word searches of the prison's legal data base using the terms plaintiff suggested and to provide responsive cases to him. Where he occasionally provided an inaccurate citation, Weddle was able to search further and locate the case he wanted. (Id.) Kim admits these basic facts but qualifies them by noting that the material provided did not give Kim the means to assess the validity of his claims nor the mechanism for filing claims in the state courts of Maine relating to the issues he wished to pursue relating to good time credit, dental care, and due process. Also, Kim complains that he had to know what he was requesting before he requested it. (Resp. SMF ¶¶ 6-11.)

In addition to the legal materials sent to Kim by Jacqueline Weddle, Assistant Attorney General Diane Sleek also sent Maine federal and state rule books and updates to the librarian at MCI/Norfolk. (SMF ¶ 12.) Kim qualifies this paragraph by noting that the rule books were kept under lock and key at Norfolk, limiting his access. (Resp. SMF ¶ 12.) He also reiterates his

---

[2] There are two paragraphs numbered eleven in defendants' statement of fact. (Doc. No. 16.)

8

complaint that the rules did not provide him with a mechanism for assessing the validity of his claims. (Id.)

Kim's Statement of Additional Material Facts (SAMF)(Doc. No. 20) consists of eight paragraphs, a portion of which consists of legal conclusions or unsupported factual assertions. Specifically in paragraphs thirteen and eighteen Kim draws legal conclusions relating to Kim's access to Maine courts. According to Kim, Defendant Magnusson had a constitutional duty and affirmative obligation to provide Kim with access to the state courts of Maine. (SAMF ¶ 13.) As a direct result of Magnusson's actions or inactions, Kim maintains that he suffered the actual injury of being denied access to the state courts of Maine. (SAMF ¶ 18.) I sustain the defendants' objections to these paragraphs and exclude them because they are conclusory in nature and have no factual content.

Kim asserts that he attempted to avail himself of the state courts of Maine using the means of access that Magnusson provided but was so stymied by the inadequacies of the Legal Access Program that Kim could not get his proverbial foot in the courthouse door. (SAMF ¶ 14.) Magnusson denies this assertion by noting that there is no record evidence that Kim ever attempted to file a state court complaint regarding any of his issues, let alone that the complaint was dismissed or denied due to some failure on the part of the Legal Access Program. (Reply SAMF ¶ 14, Doc. No. 21.)

Daniel LaPlante, an inmate imprisoned with Kim, drafted and typed all of Kim's pleadings in this case. (SAMF ¶ 19.) LaPlante is unskilled in Maine state law and Maine regulations and, thus, believes he is unable to assist Kim in seeking to redress his other issues in the state courts of Maine. (SAMF ¶ 20.)

*Discussion*

In Bounds v. Smith the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). In a subsequent case, Lewis v. Casey, the Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

518 U.S. 343, 351 (1996); see also Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000). This right of access to courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Casey, 518 U.S. at 355.

Kim apparently wants to access the Maine state courts to address three issues under state law pertaining to prisoner classification, good time calculations, and dental care. It is apparent from both the summary judgment record developed by the defendants and the well drafted and organized pleadings that Kim has filed in this court that he has abundant access to legal materials and the assistance of a fellow inmate to draft pleadings for him. Kim's complaint is that he

cannot find in these materials key information that confirms the validity of his claims or that tells him precisely how to file his complaint in the state court. Of course, part of Kim's problem is that he is actually seeking legal advice in order to assess the merits of a complaint about areas of Maine law that are not well developed nor often litigated. See, e.g., Parkinson v. State, 558 A.2d 361, 362 & n. 4 (Me. 1989) (noting uncertainty regarding Maine procedure related to challenge to good time allowance for state prisoner housed in a federal correctional facility).

Kim, with his "proverbial foot in the door" metaphor, is trying to "shoehorn" himself into the category of litigants described in Casey as "so stymied by inadequacies of the law library that he was unable even to file a complaint." Casey, 518 U. S. at 351. Kim relies in large measure on Rich v. Zitnay, 644 F.2d 41 (1st Cir. 1981) in support of his claim that the materials supplied to him by Maine authorities were inadequate to provide him meaningful access to the Maine courts. But that case was dismissed at an early stage for failure to state a claim, without opportunity for development of a record. The First Circuit sent it back to the trial court for further development. In the present case it is abundantly plain from the summary judgment record that Kim has been given access to the basic tools necessary to research Maine law. The Maine Rules of Procedure, which the state has furnished to the Massachusetts prison library, give him information about how to file a complaint in Maine's courts. His ability to adequately circumnavigate the intricacies of this court's Local Rule 56 in responding to this summary judgment motion is further evidence of the sufficiency of the Legal Access Program afforded to Kim by the state pursuant to their settlement agreement. The factual record does not disclose a constitutional violation on Magnusson's part.

Kim tries to suggest that the legal access system under which he is operating is akin to the "Catch-22" of an exact citation system. However, the Weddle affidavit plainly establishes

that Kim is <u>not</u> required to provide exact citations.  In fact, she even conducts word or term searches based on the words or terms he gives her and provides him with the case citations located by using those terms.  Kim is correct that "a person must know what they want before they request it" (Resp. Mot. Summ. J. at 4, Doc. No. 19) in the sense that he must provide the words or term to set the parameters of the search, but that represents the contours of 21st century computer assisted legal research.  It is far removed from the "Catch-22" of an exact citation system referenced in the 1989 <u>Zitnay</u> opinion.  See <u>Rich v. Zitnay</u>, 644 F.2d at 43 (referencing the requirement that plaintiffs had to supply precise citations to the University of Maine Law School in order to obtain copies of cases).

Additionally, to the extent Kim is complaining about procedures in Massachusetts that limit his access to Maine based materials that are available in the prison library where he is located, both the sending jurisdiction (Maine) and the receiving jurisdiction (Massachusetts) share the responsibility of providing access to the courts.  <u>Hannon v. Allen</u>, 241 F. Supp. 2d 71, 75 (D. Mass. 2003).  Those difficulties encountered by Kim in terms of actual use of the material provided by Maine officials cannot be blamed on Magnusson and monetary damages cannot be assessed against Magnusson because of those policies and procedures.

**Conclusion**

Based upon the foregoing I recommend that the defendants' motion be granted and this matter be dismissed in accordance with this recommended decision.

NOTICE

      A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                              /s/ Margaret J. Kravchuk
                              U.S. Magistrate Judge

September 19, 2011